United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 13, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-11175 and
No. 04-10933
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KENDRICK JERMAINE FULTON, also known as Ken Fulton,

Defendant-Appellant.

---------------------
Appeals from the United States District Court
for the Northern District of Texas
USDC No. 5:02-CR-94-2-C
---------------------

Before DAVIS, SMITH and DENNIS, Circuit Judges.

PER CURIAM:[*]

In No. 03-11175, Kendrick Jermaine Fulton appeals his
conviction and sentence, following a jury trial, for conspiracy
to possess with intent to distribute more than five kilograms of
cocaine and more than 50 kilograms of cocaine base, in violation
of 21 U.S.C. § 846.  The district court sentenced Fulton to 400
months in prison and to five years of supervised release.  In No.
04-10933, Fulton, proceeding pro se, appeals from the denial of
his pro se motion for new trial.  We consolidate the two appeals
sua sponte.  See FED. R. APP. P. 3(b)(2).

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

A.    No. 03-11175

Before trial began, Fulton asked to proceed pro se, and the district court granted his request, but stated that his appointed attorney would remain as stand-by counsel.  Fulton proceeded pro se at a pre-trial hearing on the admissibility of wiretap evidence.  (After the hearing, the court granted Fulton's motion to rescind his request to proceed pro se, and it reappointed his attorney to represent him at trial.)  Fulton now contends that he did not knowingly and voluntarily waive his right to counsel at the pre-trial hearing, in that the court failed to warn him adequately about the dangers and disadvantages of self-representation as required by Faretta v. California, 422 U.S. 806 (1975).  The district court, however, warned Fulton that his case was "complex," that it would involve "complex issues" regarding wiretap evidence, that it was in Fulton's "best interest" to continue with appointed counsel, and that he would have a "daunting task" if he proceeded pro se at trial, where he would be faced with a "very capable prosecutor."  We have held that similar warnings are sufficient under Faretta to warn a defendant of the danger and disadvantages of proceeding pro se.  See United States v. Joseph, 333 F.3d 587, 590 (5th Cir. 2003).

Fulton argues that the district court abused its discretion by requiring him to wear leg irons and a "stun belt" during trial, violating his right to a presumption of innocence.  Fulton wore the leg irons throughout the trial.  The stun belt was not placed on him until the third day of trial, after the court

stated that it had overheard a confrontation between Fulton and marshals.  At that time, the prosecutor also described an incident in her office, during which Fulton allegedly had attempted to walk away while wearing handcuffs and leg irons and had to be forcibly detained in the office.  (Fulton's version of this incident differed.)  The transcript of Fulton's detention hearing reflected that he had been a fugitive for seven months in the instant case (before turning himself in) and that, in the past, he had been charged with and convicted of assaults.  It appears that one juror, at most, was aware that Fulton was wearing leg irons and that none were aware that he was wearing a stun belt.  Given the reasons cited by the court and reasons that are evident from the record, the district court did not abuse its discretion in requiring Fulton to wear the restraints.  See Joseph, 333 F.3d at 590; United States v. Hope, 102 F.3d 114, 118 (5th Cir. 1996); United States v. Ellender, 947 F.2d 748, 760 (5th Cir. 1991).  For the first time on appeal, Fulton raises a distinct constitutional argument regarding the stun belt:  that a defendant's anxiety about being electrically shocked impinges upon his ability to confer with counsel and to participate meaningfully in the trial.  See United States v. Durham, 287 F.3d 1297, 1304-05 (11th Cir. 2002) (discussing such an argument).  The record of the instant case, however, indicates that Fulton in fact participated actively in his trial and neither expressed nor exhibited anxiety about the stun belt.

Fulton argues that the district court abused it discretion by rejecting his pro se request, following the close of evidence, to recall Government witnesses for further cross-examination. The court offered Fulton an opportunity to explain how additional testimony would be relevant and helpful.  We conclude that the district court did not abuse its discretion in concluding that additional cross-examination was not warranted.  See United States v. Masat, 948 F.3d 923, 933 (5th Cir. 1992).

Fulton maintains that the district court clearly erred in calculating his criminal history score, when it added two criminal history points because the instant offense was committed while Fulton was serving a term of deferred adjudication for a 1992 conviction.  See U.S.S.G. § 4A1.1(d).  Testimony by a DEA agent at Fulton's sentencing and by Fulton's codefendant Edgar Joe Cofer at trial, as well as unrebutted information in Fulton's Presentence Report ("PSR"), reflected that Fulton had been selling cocaine since the early 1990s.  No clear error is apparent.  See United States v. Infante, ___ F.3d ___ (5th Cir. Mar. 21, 2005), 2005 WL 639619 at *12 n.14; United States v. Fitzgerald, 89 F.3d 218, 223 (5th Cir. 1996); U.S.S.G. § 6A1.3.

Finally, Fulton contends for the first time on appeal that, under Blakely v. Washington, 124 S. Ct. 2531 (2004), Sentencing Guidelines increases imposed in his case violated his Sixth Amendment right to trial by jury because the factors upon which those increases were based were not submitted to the jury.

In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that, "'[o]ther than the fact of a prior conviction, any fact that increases the penalty beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'"  In Blakely, the Supreme Court held that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  124 S. Ct. at 2537.  In United States v. Booker, 125 S. Ct. 738, 756 (2005), the Supreme Court extended the Blakely holding to the Guidelines, holding that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved beyond a reasonable doubt."  The Court excised 18 U.S.C. § 3553(b)(1) of the Sentencing Reform Act, rendering the guidelines effectively advisory rather than mandatory.  Id. at 764-65.  Under Booker, district courts are still required to consider the guidelines, and Booker applies to this direct appeal.  See id. at 757-69.  A challenge under Blakely and Booker that is raised for the first time on appeal, however, is reviewable only for plain error. United States v. Mares, ___ F.3d ___ (5th Cir. Mar. 4, 2005), 2005 WL 503715 at *8.

Although the district court erred by enhancing Fulton's guidelines sentence based on factors not submitted to the jury, the error was not preserved in the district court and Fulton

cannot demonstrate plin error on appeal unless he shows that the error affected his "substantial rights." Id. Because Fulton has not identified anything in the record to suggest that the district court would have sentenced him differently under the pre-Booker advisory Guidelines regime, Fulton has not shown plain error. Id. at *9. Fulton's contention that his sentence violated Apprendi itself because the jury returned a "general verdict" that did not address drug quantity is belied by the record, which reflects that the district court specifically instructed the jury that, to find Fulton guilty, it was required to find that the offense involved the drug quantities charged in the indictment.

The conviction and sentence are AFFIRMED.

B.    No. 04-10933

In Fulton's pro se FED. R. CRIM. P. 33 motion for a new trial, which was filed several months after Fulton's trial and sentencing, Fulton argued that the Government had obtained the wiretap evidence illegally and that it used a "recycled" affidavit. The district court denied the motion without requiring the Government to file a response.

This court reviews the denial of a motion for new trial for abuse of discretion. Infante, 2005 WL 639619 at *7. Such motions are "'disfavor[ed]'" and "'view[ed] with great caution.'" Id. (citation omitted).

In his appellate brief, Fulton focuses on "newly discovered evidence" in the form of polygraph results from three tests of

his codefendant Cofer, which he allegedly learned about from Cofer's mother.  He has not provided a copy of the results or specifically described their contents.  (In the district court, Fulton made only cursory reference to this evidence.)  According to Fulton, the polygraph results would show that the affidavit offered in support of the wiretap application contained inaccurate information and would have made the wiretap evidence inadmissible.  A review of the wiretap application and its supporting affidavit reflect that the alleged newly discovered evidence is immaterial and that, were it introduced at a new trial, it would probably not produce an acquittal.  See Infante, 2005 WL 639619 at *7.  The district court did not abuse its discretion in denying Fulton's motion for new trial.  Id.

We AFFIRM the district court's order denying Fulton's motion for new trial.  Fulton's pro se motion for the production of grand jury transcripts is DENIED.

CONVICTION AND SENTENCE AFFIRMED; DENIAL OF MOTION FOR NEW TRIAL AFFIRMED; MOTION DENIED.