United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 16, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————————————

No. 04-40796

————————————————

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

versus

WILBERT SHARUN JONES,

                                        Defendant-Appellant.

--------------------

Appeal from the United States District Court
for the Eastern District of Texas

--------------------

Before DAVIS, JONES and GARZA, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

     Wilbert Sharun Jones appeals his conviction for possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1).  Jones challenges the denial of his motion to suppress evidence found in a search of his apartment and claims that the district court erred in allowing him to proceed *pro se* without providing the required admonishments, violating his right to counsel under the Sixth Amendment.  Based on the district court's failure to sufficiently insure that Jones' waiver of his right to counsel was knowing and intelligent, we vacate his conviction.  Because we remand and the

motion to suppress is likely to remain at issue in a second trial, we also examine Jones' argument regarding the search, concluding that no Fourth Amendment violation occurred.

I.

Jones and Jamithon Javonne Broussard were indicated for possession with intent to distribute 50 grams or more of cocaine base. Jones moved to suppress all evidence seized in connection with the charge.

At the suppression hearing, Karen Roblin, general manager of the Lancaster Cornwall Apartments, testified that she and a pest exterminator entered apartment 234-C and that she saw a spoon with a white powder residue that she believed was some type of illegal drug. Jones is the lessee of that apartment. After the exterminator completed his work, Roblin exited the apartment and directed the assistant manager, Carolyn Petoskey, and the groundskeeper, David Cortez, to verify her suspicions. They did so. Petoskey prepared an eviction notice because it was a violation of the lease to engage in illegal activity. When she went to post the notice in the apartment, she asked Clay Woodward, a police officer who was a resident and served as a security officer for the complex, to accompany her to confirm her suspicions regarding the drugs and as a safety precaution. They entered the apartment together and saw cookies of cocaine base and tools of the cocaine trade in plain sight in the kitchen. Petosky was asked not to post the eviction notice until a search

warrant could be obtained and executed. Woodward called a narcotics investigator, Erik Kvarme, informed him of what he had seen and requested that he get a search warrant for the apartment.

Two police officers arrived at the complex a short time later and established surveillance on the apartment. Jones and Broussard arrived at the complex in a tan Cadillac and entered the apartment. After a short time, they exited the apartment, proceeded to the Cadillac and attempted to leave the complex. As the police officers approached the vehicle, it sped away and a high speed chase ensued. As the Cadillac drove away, Jones was seen throwing an object from the vehicle, which was recovered by police and determined to be a crack cocaine cookie. The Cadillac crashed. Broussard exited the vehicle and threw a bag of crack cocaine under it. The bag was later recovered. Jones was arrested as he exited the Cadillac. After the arrest, a detective executed a search warrant on the apartment and recovered nine cookies of crack cocaine. The district court denied Jones' motion to suppress.

Jones proceeded to trial. On the day before trial, Jones told the district court that he would rather represent himself than proceed with appointed counsel. The district court allowed Jones to represent himself and placed appointed counsel on standby. Jones was found guilty by the jury and sentenced to 168 months in prison. Jones appeals, with representation.

Jones, who is represented by counsel on appeal, challenges the district court's denial of his motion to suppress and the admission of the evidence found during the search of his apartment. In reviewing the denial of a motion to suppress, we review factual findings for clear error and legal conclusions *de novo*. United States v. Hunt, 253 F.3d 227, 229-20 (5th Cir. 2001). Jones concedes that the district court was correct in finding that the initial entries into the apartment and the discovery of drugs by Roblin and Petoskey were not under the color of law but by private citizens. As such no Fourth Amendment issues are raised with regard to their entry into the apartment. United States v. Jacobsen, 466 U.S. 109, 113-14 (1984).

Jones argues that Officer Woodward's entry into the apartment without a warrant constituted a violation of his Fourth Amendment rights. This court has held that "a police view subsequent to a search conducted by private citizens does not constitute a 'search' within the meaning of the Fourth Amendment so long as the view is confined to the scope and product of the initial search." United States v. Runyan, 275 F.3d 449, 458 (5th Cir. 2001). There is no indication in the record of the suppression hearing that Officer Woodward performed any search

beyond the scope of the prior private searches.[1]  No Fourth Amendment violation occurred under these circumstances and the evidence obtained in the search was properly admitted at trial.

III.

Jones also argues that he did not knowingly and intelligently waive his right to counsel at trial.[2] The day before trial was to commence, Jones' appointed counsel, Barlow, informed the court that the defendant may want to represent himself.  The court asked Jones if he did.  Jones responded that he would rather represent himself than have Barlow represent him. The court told Jones that he would not appoint a different attorney for him.  The court then appointed Barlow as standby counsel.  When Jones asked the court how to get subpoenas and witnesses, the court told him that he did not practice law and that Barlow was an "extremely competent A-rated lawyer."  When Jones asked about discovery, Barlow offered to meet with Jones to go over the record.  The court clarified with Jones and his mother that Barlow's fee would be paid by the government.  The government asked the court for a hearing on Jones' waiver of his right to an attorney.  At that point the court asked Jones to

---

[1]  The district court appears to have denied the motion to suppress on the basis that the entry by Woodward was not under color of law, but in the company of a private citizen who had the right to enter.  The district court specifically found that the drugs were in plain view.

[2] Jones was represented by retained or appointed counsel for the motion to suppress and up to the point the trial began.

confirm that he understood that Barlow would serve without cost and that he was certified specialist in criminal law, which Jones did. No formal hearing was held then or later. Jones again expressed concern that Barlow was not sufficiently familiar with his case. Barlow confirmed that he was prepared for trial. Jones indicated to the court that because of the minimal time that Barlow had met with him, he would represent himself because he best knew the facts of his own situation.

The next morning, the court asked Jones if he fully realized that representing himself was dangerous to him. Jones responded yes. The court asked Jones if he had discussed representing himself with Mr. Barlow. When Jones responded that he hadn't, the court gave Jones an opportunity to confer with Barlow. The court, while acknowledging Jones' right to represent himself, strongly recommended to Jones that he have an attorney. The judge reiterated his view of Barlow's qualifications and his recommendation that he have an attorney. The court again told Jones that it was absolutely voluntary on Jones' part whether or not to have an attorney, that he was not trying to force him, but that he recommended it highly. After the conference with Barlow, Jones again stated his decision to represent himself. The court again appointed Barlow as standby counsel.

Jones argues that the district court failed to give him adequate warnings about the dangers and disadvantages of self-representation, as required by Faretta v. California, 422 U.S.

806 (1975).  A defendant in a criminal trial has a Sixth Amendment right to represent himself, but only when he knowingly and intelligently chooses to do so.  United States v. Joseph, 333 F.3d 587, 589-90 (5th Cir. 2003)(citing Faretta, 422 U.S. at 833-35). Such constitutional challenges are reviewed *de novo*. Joseph, Id. at 589.  "A defendant who wishes to waive the right to counsel should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with his eyes open."  Id. at 590 (citations and internal quotation marks omitted).

> In determining whether a defendant has effectively waived the right to counsel, the district court must consider various factors, including the defendant's age, education, background, experience, and conduct. The court must ensure that the waiver is not the result of coercion or mistreatment, and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practicality of waiving the right to counsel.

Id. (citations omitted).

The Benchbook for U.S. District Court Judges, published by the Federal Judicial Center, provides a guide for questions the judge can ask to convey the disadvantages the defendant will likely suffer if he proceeds pro se which is reproduced in the margin.[3]  We do not suggest that a district court must follow a

---

[3] The recommended inquiry reads as follows:

(1) Have you ever studied law? (2) Have you ever represented yourself in a criminal action? (3) Do you

7

understand that you are charged with these crimes: [state the crimes with which the defendant is charged]? (4) Do you understand that if you are found guilty of the crime charged in Count I the court must impose an assessment of $ 50 and could sentence you to as many as __ years in prison and fine you as much as $_____? [Ask defendant a similar question for each crime with which he or she may be charged in the indictment or information.] (5) Do you understand that if you are found guilty of more than one of those crimes this court can order that the sentences be served consecutively, that is, one after another? (6) Do you understand that the U.S. Sentencing Commission has issued sentencing guidelines that will affect your sentence if you are found guilty?

(7) Do you understand that if you represent yourself, you are on your own? I cannot tell you or even advise you how you should try your case. (8) Are you familiar with the Federal Rules of Evidence? (9) Do you understand that the Federal Rules of Evidence govern what evidence may or may not be introduced at trial and that, in representing yourself, you must abide by those rules? (10) Are you familiar with the Federal Rules of Criminal Procedure? (11) Do you understand that those rules govern the way a criminal action is tried in federal court? [Then say to defendant something to this effect:] (12) I must advise you that in my opinion a trained lawyer would defend you far better than you could defend yourself. I think it is unwise of you to try to represent yourself. You are not familiar with the law. You are not familiar with court procedure. You are not familiar with the rules of evidence. I strongly urge you not to try to represent yourself. (13) Now, in light of the penalty that you might suffer if you are found guilty, and in light of all of the difficulties of representing yourself, do you still desire to represent yourself and to give up your right to be represented by a lawyer? (14) Is your decision entirely voluntary? [If the answers to the two preceding questions are yes, say something to the following effect:] (15) I find that the defendant has knowingly and voluntarily waived his right to counsel. I therefore permit the defendant to represent himself [herself].

United States v. Davis, 269 F.3d 514, 519 (5th Cir. 2001), citing

8

script.  This court "require[s] no sacrosanct litany for warning defendants against waiving the right to counsel," United States v. Davis, 269 F.3d 514, 519 (5th Cir. 2001), and has approved warnings much less thorough than the guidelines presented in the bench book.

For example, in United States v. Joseph, Joseph, like Jones, expressed a desire to proceed *pro se* due to lack of confidence in his counsel. Id. at 590.  Also similar to this case, the court recommended several times that Joseph allow counsel to represent him because they were very good lawyers.  Unlike the facts of this case, the court in Joseph explained the disadvantages of self-representation and specifically recommended that Joseph allow counsel to question witnesses, conduct cross-examination and put on any evidence on his behalf.  Id.

This court has also affirmed a defendant's waiver of his right to representation under warnings less than the guidelines above but which contained practical counsel about the disadvantages and dangers of self-representation.  United States v. Fulton, 131. Fed. Appx. 441 (unpublished), (5th Cir. 2005). In Fulton, the court warned the defendant that his case was "complex", involved "complex issues" and it was in his best interest to proceed with appointed counsel. Id. at 442.  The court also warned that the defendant faced a "daunting task" if

_____

Benchbook 1.02 (4th ed. 2000).

9

he chose to proceed on his own because he was facing a "very capable prosecutor." Id. at 443.

The risk of an off the cuff exchange with the defendant is that the exchange may end up lacking a sufficient basis on which we can find that the defendant made a knowing and intelligent waiver of this important right. In United States v. Davis, we vacated Davis' conviction based on our conclusion that district court's warnings against self-representation did not satisfy the requirements of Faretta. 269 F.3d 514, 520 (5th Cir. 2001). Davis was dissatisfied with his attorney because the attorney refused to ask witnesses the questions Davis had prepared. The district court confirmed that Davis wanted to proceed to ask the questions in spite of his attorney's advice that asking the questions and personally participating in the trial was not in his best interest. The district court also pointed out that by asking the questions Davis might implicate himself and place him in an awkward position with the jury and with his attorney. We concluded that the court's exchange with the defendant did not discharge the district court's responsibility to warn Davis of the "perils and disadvantages of self-representation." Id. The court's reliance on warnings given by Davis' counsel were not sufficient, because Davis no longer trusted him.

In this case, the district court did not counsel Jones about the dangers of self-representation or expressly consider any of the Joseph factors. Although the district court recommended to

10

Jones that he have an attorney and stated that his appointed counsel was highly qualified, the district court took no steps, except in the most general way, to insure that Jones was "aware of the dangers and disadvantages of self-representation." Joseph, 333 F.3d at 590. In addition, the court made no inquiry into Jones' education or background to evaluate his fitness for the task. Neither did the court determine if Jones understood the nature of the charges against him, the consequences of the proceedings or the practical effects of waiving his right to counsel. Id.

Jones' inquiry regarding the method for obtaining subpoenas and witnesses and the district court's response that he would not help him are insufficient to satisfy the district court's obligation to warn the defendant of the practical consequences of self-representation. Neither was granting Jones the opportunity to confer with counsel whose performance Jones considered unsatisfactory. We reiterate this court's position that "no sacrosanct litany" of warnings is required. Davis, 269 F.3d at 519. However, when a defendant expresses a desire to represent himself, the district court must do more to protect the defendant's Sixth Amendment right to counsel than repeat its recommendation that a defendant proceed with his available qualified appointed counsel.

IV.

For the foregoing reasons, we vacate Jones' conviction and

11

remand this case to the district court for a new trial.  VACATED

and REMANDED.