# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 3, 2009

Charles R. Fulbruge III
Clerk

No. 06-30657

CALVIN GROSS

Petitioner - Appellant

v.

LYNN COOPER

Respondent - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:05-CV-01052

Before GARWOOD, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Defendant Calvin Gross was indicted for one count of possession with the intent to distribute marijuana and one count of distribution of cocaine in Louisiana state court. In pre-trial hearings relating to both counts, Gross explicitly rejected representation and agreed to self-representation in his two separate trials on the two counts. The relevant colloquies in respect to his self-representation with the state court judge are as follows:

> [COURT]: You desire not to be represented by the Public Defender; is that correct?
> [DEFENDANT]: Yes.
> [COURT]: You desire to represent yourself?
> [DEFENDANT]: Yes.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

| | |
|---|---|
| [COURT]: | So, you understand that you have the right to counsel. You understand, under our Constitution, you have a right to legal counsel and I have appointed for you, the Public Defender, because you did not have the ability to pay for any attorney. |
| [DEFENDANT]: | Yes. |
| [COURT]: | And you are desiring, at this time, to release them from any further obligation on your case? |
| [DEFENDANT]: | Yes. |
| [COURT]: | And you are waiving the right to counsel; is that correct? |
| [DEFENDANT]: | To the Public Defender. |
| [COURT]: | Well, you want an attorney, you just don't want them, is that what you're telling me? |
| [DEFENDANT]: | Yes. |
| [COURT]: | Then, you'll need to file a motion because we are not going to do it on just no hearing right here. So, you file any motion you need to file and we'll get you back in here, because you need to allege reasons why they need to be out, because I'm not going to just let them out. It doesn't work that way. |
| [DEFENDANT]: | I don't need them, I'll just represent myself. |
| [COURT]: | Okay, well, then, you will need to file whatever motions you desire. |

At the second pre-trial hearing, the district court then had the following exchange with Gross:

| | |
|---|---|
| [COURT]: | Alright, Mr. Gross, it's my understanding that you do not desire the Public Defender's Office to represent you; is that correct? |
| [DEFENDANT]: | That's correct. |

2

| | |
|---|---|
| [COURT]: | Why is that? |
| [DEFENDANT]: | He's poor representation. I, I mean, I sent you the Motion you told me to send to you, I sent it to you. |
| [COURT]: | And how does that answer the question of why you don't want them to represent you? |
| [DEFENDANT]: | Your Honor, we about to go to trial. Ask him what he know about my case besides what the police report says. |
| [COURT]: | No, no, I have put you under oath. I'm asking you. I need, for the record, for you to tell me why you don't want him to represent you, that's all. |
| [DEFENDANT]: | Well, this man never accept a phone call from me, you understand. Never, never, y'all ain't know nothing about what's happening, you know what I'm saying. Just tell me, take thirty years, take forty -- no, I can't. I mean, he supposed to be my lawyer. |
| [COURT]: | Okay, here are your choices. The Constitution allows you an attorney. I have appointed you one. You don't get to pick and choose. If you can't afford one, I appoint you one. So, here are your choices and it doesn't matter to me. You can have the Public Defender's Office or you can represent yourself. |
| [COURT]: | Which would you like? |
| [DEFENDANT]: | I don't need no help. |
| [COURT]: | You don't need help? Okay. Let the Public Defender be relieved of any further obligation. Let Mr. Gross be his attorney. |

Defense counsel informed the court that he had advised Gross of the penalties for the charges that he was facing and that he could be facing life in prison as an

habitual offender. Counsel also stated to the court that Gross had refused to sign a document containing this advice concerning the charges. Gross, proceeding pro se, was subsequently found guilty by a jury on both counts in two separate trials. He was sentenced to consecutive sentences of 25 years and 30 years for his marijuana and cocaine convictions respectively. On direct appeal, Gross argued that the trial court erred in denying his right to counsel and ordering him to proceed to trial without a valid waiver of his right to counsel. The Louisiana Court of Appeals for the First Circuit affirmed both convictions and sentences in 2-1 decisions. Judge Downing dissented from both decisions. He concluded in both decisions that

> [t]he record should contain some indication that the trial court tried to assess the defendant's literacy, competency, understanding, and volition before he accepted the waiver of counsel. . . . Other than volition, none of these indications are in the instant record, nor is there any showing the trial court adequately informed the defendant of the dangers and disadvantages of representing himself.

Gross filed writs of certiorari for both convictions with the Louisiana Supreme Court. The Louisiana Supreme Court denied the petitions by votes of 4-3. Justice Johnson of the Louisiana Supreme Court assigned reasons in her dissent from denial of the writs. Relying on *Faretta v. California*, 422 U.S. 806 (1975), Justice Johnson stated that

> a review of the transcript makes it abundantly clear that the trial court failed to ascertain whether the defendant's waiver of his right to counsel was made intelligently. There is no indication that the trial court made an attempt to assess the defendant's literacy, competency, understanding, and volition prior to accepting the waiver of right to counsel. Moreover, the trial court made no attempt to inform the defendant of the dangers and disadvantages of self-representation.

*Louisiana v. Gross*, 868 So. 2d 20, 21 (La. 2004) (Johnson, J., dissenting from denial of the writ) (internal quotation marks omitted). The United States

4

Supreme Court denied Gross' petitions for writs of certiorari on January 10, 2005. *Gross v. Louisiana,* 543 U.S. 1056 (2005).

Gross filed a 28 U.S.C. § 2254 application raising the same arguments denied on direct appeal for both convictions. The magistrate judge recommended that his application be denied. The district court adopted the magistrate judge's recommendations and also denied his application for a COA. Gross filed an appeal. Without considering the merits, we remanded the case back to the district court "for the limited purpose of determining whether its dismissal involved Gross's cocaine conviction or his marijuana conviction." The magistrate judge clarified that the denial of the application related to both convictions. The district court adopted the magistrate judge's recommendation and Gross timely appealed. We then granted Gross a COA on the issue of "whether the district court erred by allowing Gross to represent himself at trial without first obtaining his knowing and intelligent waiver of his right to counsel" as it relates to both convictions.

## STANDARD OF REVIEW

Gross' application for section 2254 relief is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, a federal habeas court may not grant relief to a prisoner serving a state sentence with respect to any claim adjudicated on the merits in a state court unless the state court ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state decision is "contrary to" clearly established federal law if the state court applies a rule that is "substantially different from" or "contradicts" governing Supreme Court precedent, or if the state court reaches a decision opposite that reached by the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

5

A decision involves an "unreasonable application" of federal law if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. An "unreasonable application" of federal law must be something more than a mere incorrect application. *Id.* at 410-11 ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."). The state court's findings of fact are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## ANALYSIS

In *Faretta,* the Supreme Court considered "whether a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so" under the Sixth and Fourteenth Amendments. 422 U.S. at 807. While every defendant has a right to proceed without a lawyer, the choice to proceed must be made "voluntarily and intelligently." *Id. Faretta* emphasized that the defendant must understand that he is not just relinquishing the right to counsel but also the specific benefits associated with representation by counsel. *Id.* at 835. "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Id.* In order to ensure that the choice is voluntary and intelligent, the Court noted that "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). Thus, a

6

defendant must not only voluntarily give up the right to representation but must do so *after* understanding the dangers and disadvantages of self-representation. *See Moran v. Burbine,* 475 U.S. 412, 421 (1986) (noting that a voluntary, knowing and intelligent waiver "must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it").

In subsequent cases, the Court has especially emphasized the need to convey dangers of self-representation before a criminal defendant forgoes counsel *at trial.* In *Patterson v. Illinois,* 487 U.S. 285, 298 (1988), the Court noted that "recognizing the enormous importance and role that an attorney plays at a criminal trial, we have imposed the *most rigorous restrictions on the information* that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel at trial." (emphasis added). The Court in *Iowa v. Tovar* stated that "[a]s to waiver of *trial counsel*, we have said that before a defendant may be allowed to proceed pro se, he must be warned *specifically of the hazards ahead.*" 541 U.S. 77, 88-89 (2004) (emphasis added). "Warnings of the pitfalls of proceeding to trial without counsel, [the Court] therefore said, must be 'rigorous[ly]' conveyed." *Id.* at 89 (quoting *Patterson*, 487 U.S. at 298).

Consistent with the Court's strong admonition that the trial court must make sure the defendant is aware of the consequences of his waiver before accepting the waiver, we read *Faretta* to require the trial court to inquire and determine if the defendant intelligently waived his right to counsel.

> Lest there be a case in which a defendant clearly asserts the right to defend pro se (so that denial of the right would be error) without clearly waiving the right to counsel (so that there remains some question whether the waiver was knowing and intelligent), a trial judge should engage in a dialogue with such a defendant, explaining to him the consequences of defending pro se. *Faretta* admonishes that the defendant must be "made aware of the (advantages) and disadvantages of self-representation."

7

*Chapman v. United States,* 553 F.2d 886, 892 (5th Cir. 1977) (quoting *Faretta*, 422 U.S. at 835). In *United States v. Jones,* we found the district court failed to abide by *Faretta* when it only warned the defendant generally of the dangers of self-representation and we therefore vacated the conviction. 421 F.3d 359, 364-65 (5th Cir. 2005). Here, compared with *Jones,* this case presents a starker failure to abide by *Faretta* – the trial court never warned the defendant of the dangers of self-representation at all.[1]

Furthermore, we have stated that

> *Faretta'*s progeny and related cases flesh-out the factors which are to be weighed [before accepting a waiver of counsel]. The court *must consider* the defendant's age and education . . . and other background, experience, and conduct. . . . The court must ensure that the waiver is not the result of coercion or mistreatment of the defendant . . . and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practical meaning of the right he is waiving.

*McQueen v. Blackburn*, 755 F.2d 1174, 1177 (5th Cir. 1985) (emphasis added). Here, the trial judge only assured itself that the waiver was voluntary but did not consider any background factors or engage in any dialogue to ascertain the defendant's awareness of the consequences or practical meaning of waiving representation. Again, the trial court clearly did not abide by its obligations under *Faretta*, because it did not inquire at all into the defendant's background before accepting his waiver of trial counsel.

Finally, for waivers of constitutional rights generally, "[i]t has been pointed out that courts indulge every reasonable presumption against waiver of

---

[1] We explicitly adopted and reproduced the relevant section of The Benchbook for Federal Judges ("The Benchbook") as "a guide for questions the judge can ask to convey the disadvantages the defendant will likely suffer if he proceeds pro se." *Jones*, 421 F.3d at 363-64 & n.3. The relevant section of The Benchbook can also be used as an instructive guide for state court judges in respect to their identical constitutional obligations under *Faretta.* We recognize that sometimes less thorough warnings have also been approved, but the trial judge in this case clearly fell below what is required by *Faretta,* because he conveyed little, if any, of the information recommended by The Benchbook. *See id.*

fundamental constitutional rights and that we do not presume acquiescence in the loss of fundamental rights." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (internal quotation marks omitted). "For that reason, it is the State that has the burden of establishing a valid waiver. . . . Doubts must be resolved in favor of protecting the constitutional claim." *Michigan v. Jackson,* 475 U.S. 625, 633 (1986).

The Supreme Court in *Tovar* and *Patterson* specifically emphasized the importance of conveying *Faretta* warnings "rigorously" for defendants requesting to proceed pro se at trial. *See Iowa,* 541 U.S. at 89; *Patterson,* 487 U.S. at 298. *Faretta* also requires the trial court to evaluate the background of the defendant before accepting a waiver of counsel. *McQueen,* 755 F.2d at 1177. While this case would clearly warrant a vacatur of a conviction on direct review, it is a much closer case given our deference to state courts under AEDPA. Nevertheless, the trial court plainly did not warn Gross about the dangers of self-representation nor did it evaluate the defendant's background. Based on: (1) the Supreme Court's plain and clearly-established admonitions that the trial court rigorously warn the pro se defendant about the disadvantages of self-representation at trial and to inquire into the defendant's background before accepting his waiver of counsel; (2) the trial court's complete failure to warn Gross in respect to the dangers of self-representation at trial and its complete failure to inquire into Gross' background at all before accepting his waiver of counsel; and (3) the general presumptions against finding a valid waiver of constitutional rights, we conclude that the state's decision to find a valid waiver of counsel in this case was an "unreasonable application" of federal law.

For these reasons, we now order the district court to grant conditional habeas relief. We REVERSE the district court's judgment denying habeas relief and REMAND this case to that court with instructions to order the State of Louisiana to either give Calvin Gross a new trial or release him from custody within 180 days of the date of the district court's order on remand.