# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 9, 2010

No. 08-31047

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JONATHAN LEE VERNIER,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:04-CR-20144

Before GARWOOD, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Jonathan Lee Vernier appeals his conviction for a federal carjacking in violation of 18 U.S.C. § 2119. The district court denied Vernier's request to represent himself at trial. After a review of the record, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 08-31047

**I.**

**A.**

In April 2003, Vernier escaped from a Colorado state prison where he was serving a 12-year sentence for car theft. While hitch-hiking in Texas following his escape, he hitched a ride with Ran Mesika, an Israeli citizen who was traveling across the country selling jewelry from a van. After traveling with Mesika for about four days, Vernier struck Mesika with a tire iron, then kept him tied up in the van until he killed him and dumped his body at an unknown location. Vernier continued toward Florida in the van he stole from Mesika, using Mesika's stolen debit card and identification.

Israeli law enforcement agents notified the FBI of the likely kidnapping of Mesika. The FBI tracked Vernier to Key West and apprehended him after a dramatic chase and resistance in May 2003. Mesika's body was found in Louisiana.

**B.**

Vernier was indicted for carjacking resulting in death in violation of 18 U.S.C. § 2119. He pleaded not guilty. Before trial, the Government requested that Vernier be shackled during trial. The Government's motion included assertions that Vernier had escaped from prison twice, that he was able to get out of handcuffs, that he regularly possessed contraband and weapons in jail, that he severely damaged a jail cell, that he resisted corrections officers' attempts to search his cell, and that he inflicted injuries on himself and told corrections officials that he wanted to kill himself and had tried to do so. The Government also asserted that it intercepted a telephone call in which Vernier told a third party that he intended to disrupt his trial and generate sound bites for the news media.

The district court held a hearing on the motion. Vernier waived his right to be present at the hearing. At the hearing, the court heard testimony from a

No. 08-31047

Deputy U.S. Marshal and an FBI agent that Vernier had taunted Mesika's family in court and had attempted to negotiate with them or to extort money from them in exchange for telling them where to find Mesika's body. The FBI agent also testified that the factual recitations in the Government's motion were accurate. The court concluded that, based on Vernier's "fairly constant contentious and defiant behavior" and the court's concerns about the safety of persons in the courtroom, he would be shackled at trial but that the restraints would be hidden from the jury as much as possible.[1]

## C.

On the first morning of trial, Vernier advised the court that he wanted to represent himself at trial. The court told Vernier that it was concerned about his history of disruptive behavior and that disruptions of the trial could result in his removal from the courtroom. Vernier responded that reports of his bad behavior were "rumors" and "a systematic plot" by jailers to discredit him.

The court denied Vernier's request to proceed *pro se* at trial. The court cited "several factors" in denying the request. First, the court noted that Vernier was asserting his right to self-representation on the morning of trial and had never raised the issue before the court. Second, the court noted that Vernier had not expressed any dissatisfaction with his appointed lawyer. Third, the court noted that Vernier had waived his own appearance at the restraint hearing. Finally, the court said its decision was "based on all the information" that was entered into the record at the restraint hearing.[2]

---

[1] The court ordered skirting for the prosecution and defense counsel's tables at trial, and ordered that Vernier be seated at defense counsel's table before the jury entered to hide the ankle shackles from view.

[2] Vernier also addressed the court, stating that because of his limited legal knowledge he did not know he needed to file a formal motion to assert his right to self-representation. The district court replied, "Just one more reason not to let you represent yourself because of your limited legal knowledge." As Vernier attempted to continue, the district court stated that it had made its ruling "on other issues."

Vernier's appointed lawyer objected on his behalf, arguing that Vernier's assertion of the right to represent himself was timely and was not interposed for the purpose of delay because Vernier was ready to proceed with trial that day. The Government declined to join the objection and referred the court to the evidence presented in the motion to shackle Vernier.

The Government also presented evidence regarding Vernier's attack on a prison guard and attempt to escape from jail just days prior to trial. The Government's witness testified that Vernier was armed with a shank during the escape attempt and that Vernier said he had been planning the attempt for three years. According to the witness, Vernier boasted that he was not going to go to prison quietly but would "go out in a bloody confrontation" without regard to whom he would have to kill. The Government argued that Vernier's real intention in requesting to represent himself was to disrupt his trial and to try to escape. The court said that the evidence about Vernier's recent escape attempt added support to its decision not to allow self-representation and "that there are other things besides timeliness" supporting the decision. The court noted its "discretion to run an orderly courtroom."

The case proceeded to trial. The jury convicted Vernier as charged. The court allowed Vernier to represent himself at the sentencing hearing, although appointed counsel was present. The court denied a request for a downward departure and sentenced Vernier to life in prison, with the term to run consecutively to each of two other sentences and concurrently to a third sentence. Vernier filed a timely *pro se* notice of appeal and is represented by appointed appellate counsel.

## II.

Vernier's only contention on appeal is that he should have been allowed to represent himself at trial. He argues that the court denied his motion on the basis of untimeliness and that his request was timely under *Chapman v. United*

No. 08-31047

*States*, 553 F.2d 886, 895 (5th Cir. 1977). He asserts that there were no other valid grounds for denying his request. The Government contends that the court's denial of self-representation was not based on untimeliness but rather was justified by ample evidence indicating that Vernier's request was intended to give him the chance to disrupt his trial and to attempt another escape.

This court reviews claims concerning the right of self-representation de novo. *United States v. Jones*, 421 F.3d 359, 363 (5th Cir. 2005). The district court's factual findings to support its ruling are reviewed for clear error. *Id.* at 361. An improper denial of the right of self-representation, if established, requires reversal without further analysis for harmless error. *United States v. Majors*, 328 F.3d 791, 794 (5th Cir. 2003).

A competent criminal defendant has a Sixth Amendment right to represent himself at trial if he knowingly chooses to do so and waives his right to counsel. *Jones*, 421 F.3d at 363; *see also* 28 U.S.C. § 1654. The right to self-representation, however, is not absolute. *Indiana v. Edwards*, 128 S. Ct. 2379, 2384 (2008). The right is forfeited by obstruction, disruptive conduct, or by abusing the dignity of the courtroom. *Id.*; *see also Faretta v. California*, 422 U.S. 806, 834 n.46 (1975). "Even at the trial level, therefore, the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 162 (2000).

Under the general principle announced by the Supreme Court in *Faretta*, *Edwards*, and *Martinez*, the right of self-representation is limited by the trial court's responsibility to maintain order and safety and to prevent disruption and delay. *See United States v. Long*, 597 F.3d 720, 726 (5th Cir. 2010) (upholding denial of the right to self-representation where the defendant had been disruptive in pretrial proceedings). We have noted in passing that a defendant's request to represent himself at trial may be rejected if it is intended to cause

delay or some tactical advantage. *Chapman*, 553 F.2d at 895. Other circuits hold that a trial court may deny the right of self-representation when evidence indicates that the defendant intends to use the right to delay or disrupt the trial. *See, e.g., United States v. Smith*, 413 F.3d 1253, 1280–81 (10th Cir. 2005) (holding that the defendant's insolent behavior showed that he was playing "cat and mouse" with the court by requesting to represent himself); *Buhl v. Cooksey*, 233 F.3d 783, 797 (3d Cir. 2000) (noting that determining whether a *pro se* defendant intends only disruption and delay is the kind of determination district courts must make routinely, but holding that the court did not make a sufficient inquiry); *see also United States v. George*, 56 F.3d 1078, 1084 (9th Cir. 1995) (holding that the defendant's pre-trial conduct, including two escapes, showed that his request to represent himself was made for purposes of delay); *see also United States v. Akers*, 215 F.3d 1089, 1097–99 (10th Cir. 2000) (approving the denial of self-representation where evidence, including the defendant's pre-trial flight, supported the district court's conclusion that the motion for self-representation was intended to delay the proceedings).

In this case, if the district court had based its denial of self-representation solely on the timing of Vernier's request, the court likely would have erred under *Chapman*, where we held that a request for self-representation is timely if made before the jury is selected. *See Chapman*, 553 F.2d at 887. The court arguably also would have erred had it based its ruling only on Vernier's limited legal knowledge. *See Faretta*, 422 U.S. at 836 (indicating that a defendant's technical knowledge is not relevant to his right to control his defense).

But neither reason was the sole basis for the district court's refusal to allow Vernier to represent himself. Instead, the district court based its ruling primarily on the same evidence that convinced the court to shackle Vernier for trial. That uncontested evidence indicated that Vernier posed a risk of violence and escape, that he was defiant and troublesome, and that he boasted that he

6

wanted to go out in a bloody confrontation, to disrupt his trial, and to make news.

Moreover, the Government presented additional testimony on the day of trial that Vernier had attempted a violent escape from jail in the 48 hours preceding the trial. The Government points out that Vernier's escape attempts or other disruptions could have delayed the trial and hindered the prosecution, which relied on the testimony of witnesses from across the country and overseas. The court considered this evidence as an additional reason to deny Vernier's request to represent himself. Thus, there was no clear error in the district court's findings.

## III.

Based on our review of the evidence and the district court's reasoning, we conclude that the district court did not err when it found that Vernier's escape attempts and risk of violence posed a threat to the courtroom protocol of the trial. Therefore, Vernier was not unconstitutionally denied his right to self-representation.

Accordingly, his conviction is AFFIRMED.