# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 27, 2012

No. 11-30151

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ALMOND J. RICHARDSON,

Defendant - Appellant

Appeals from the United States District Court
for the Middle District of Louisiana
USDC No. 3:07-CR-34-1

Before JOLLY, DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Almond Richardson stands convicted of selling drugs to confidential informants on two occasions, the second occasion while on bail for his first crime. Richardson was indicted in seven counts stemming from both incidents. Before trial, Richardson filed several motions to suppress evidence, a motion for a *Franks* hearing, and a motion to proceed *pro se*. The district court denied all of these motions. Richardson was convicted of five counts and acquitted on two counts.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30151

On appeal, Richardson argues that the district court erred by denying each of his motions and thus raises Fourth and Sixth Amendment issues. We find no merit to Richardson's contentions that the district court erred by denying his motions to suppress and his motion for a *Franks* hearing, and we therefore AFFIRM the district court's rulings on those motions.[1] We do, however, hold that the district court erred by denying Richardson's motion to proceed *pro se*. We therefore hold that Richardson is entitled to a new trial and thus VACATE all convictions and sentences and REMAND for further proceedings not inconsistent with this opinion.

I.

During the last week of February 2006, the East Baton Rouge Sheriff's Department received a tip that there was rampant drug dealing in Apartment Two of the O'Neal Lane apartment complex. On March 1, four members of the East Baton Rouge Sheriff's Department's Special Community Anti-Crime Team, Officers Kenneth Huber, Malcom Hall, Kama Roussell and John Knapp, began surveillance of Apartment Two.

Officer Huber, the leader of the surveillance operation, who was positioned inside one of the O'Neal Lane Apartments, observed people entering and exiting through Apartment Two's side door. Officer Huber saw a white male visit Apartment Two, walk to the complex's parking lot, and sell drugs to Barry Anderson, a white male sitting in a pick-up truck. Officer Huber radioed Officers Roussell and Knapp about the drug deal, and they followed Anderson's truck out of the apartment complex's parking lot. The officers stopped the truck and searched Anderson for drugs. The officers found a rock of crack cocaine in Anderson's pocket and arrested him.

---

[1] A *Franks* hearing is a hearing to determine whether a police officer's affidavit used to obtain a search warrant was based on false statements by the police officer. *Franks v. Delaware*, 438 U.S. 154 (1978).

No. 11-30151

Following the arrest, Officers Roussell and Knapp questioned Anderson, who said that he knew a black male named "Omar" who was selling drugs in Apartment Two. Anderson informed the officers that he wanted to work as a confidential informant and buy drugs from "Omar."

Officers Roussell and Knapp took Anderson to the sheriff's department substation for booking. After the booking, Officer Hall searched Anderson for contraband and then drove him from the station back to the apartment complex in an unmarked car. With Officer Huber still watching the side door of Apartment Two, Anderson went to the side door and asked Almond Richardson, whom Anderson knew as "Omar," for forty dollars worth of crack cocaine. At that point, Anderson entered the apartment, and the officers did not see any more of Anderson's interaction with Richardson. After Anderson left the apartment, he immediately returned to Officer Hall's truck and told Officer Hall that he bought forty dollars worth of crack cocaine from Richardson. After another search of Anderson's person, Officer Hall recovered almost a gram of crack cocaine from Anderson.

The next day, on March 2, Officer Huber filed a warrant affidavit, seeking a search warrant for Richardson's apartment and vehicle ("March 2 warrant" or the "March 2, 2006 warrant"); the warrant was primarily supported by the controlled buy. The affidavit for the search warrant stated that a confidential informant contacted Huber and that the confidential informant volunteered to participate in a controlled buy. The affidavit further indicated that the officers had constant visual surveillance of the outside of Apartment Two before and after the buy. A state court magistrate granted the sheriff's department the search warrant on the basis of the facts contained in Officer Huber's warrant affidavit.

The sheriff's department executed the warrant on that same day. After a search of Richardson's apartment, the police found crack cocaine, a loaded

rifle, marijuana, and marijuana plants. The police found more marijuana in Richardson's car.

After finding Richardson's collection of various and sundry drugs, the officers read Richardson his *Miranda* rights; Richardson stated that he understood his rights and signed a form to such effect. Richardson told the police that he sold cocaine and marijuana and that the marijuana plants belonged to him. Richardson was then arrested.

On February 15, 2007, a federal grand jury returned a four-count indictment charging Richardson with crimes related to the March 2, 2006 warrant, including: distribution of cocaine base (Count 1),[2] being a felon in possession of a firearm (Count 2),[3] possession with the intent to distribute marijuana (Count 3),[4] and possession of marijuana plants (Count 4).[5]

In May 2007, more than a year after Richardson's previous arrest and when he was out on bail, Richardson began selling drugs from his girlfriend's apartment in the St. Jeanne apartment complex. A confidential informant ("CI"), who lived in the apartment complex and was tired of the seedy characters that Richardson's drug dealing attracted to the apartment, contacted the East Baton Rouge Sheriff's Department. The CI informed the department that Richardson was selling drugs from the apartment as well as his business, Just 4 U Fashion. The CI further volunteered to participate in a controlled buy from Richardson.

---

[2] Distributing cocaine base violates 21 U.S.C. § 841(a)(1).

[3] Felons possessing firearms violate 18 U.S.C. § 922(g)(1).

[4] Possession with the intent to distribute marijuana violates 21 U.S.C. § 841(a)(1).

[5] Growing marijuana plants violates 21 U.S.C. § 841(a)(1).

No. 11-30151

On May 17, the CI approached Richardson's girlfriend's apartment and bought fifty ecstasy pills from Richardson with five bills previously marked by the sheriff's department.

With probable cause established by the controlled buy, the sheriff's department obtained a search warrant for Richardson's girlfriend's apartment and an arrest warrant for Richardson. The sheriff's department delayed execution of the warrants because they did not yet have probable cause to obtain a search warrant for Richardson's store, Just 4 U Fashion.

The next day, May 18, the sheriff's department started surveilling Just 4 U Fashion, which was not yet open to the general public, as indicated by a sign outside the store that stated "Just For You Coming Soon." A white Honda Civic soon pulled up to the store. Three people got out of the car, knocked on the store's door, entered the store, and returned to their car three to four minutes later. Shortly afterward, another car pulled up to the store. Richardson went up to the car and conducted a hand-to-hand deal with the driver. Finally, a four-wheeler ATV pulled up to the store, and the officer saw Richardson conduct another hand-to-hand deal. After this third, apparent drug deal at Just 4 U Fashion, two officers knocked on the business' door to execute Richardson's arrest warrant. After the arrest, the officers conducted a search of Richardson, and recovered two of the marked, one-hundred-dollar bills that the CI had used the day before in the controlled buy.

During the time that Richardson was being arrested at the store, other officers executed the search warrant at Richardson's girlfriend's apartment, which did not yield any contraband. However, based on the information obtained from the CI and the officer's observation of three apparent drug deals, the sheriff's department decided to obtain a search warrant for Just 4 U Fashion. That night, an officer contacted Judge Marabella, a Louisiana state magistrate judge, via telephone and read a warrant affidavit to the judge (the

5

"May 18 warrant" or the "May 18, 2007 warrant"). The  warrant affidavit indicated that the surveilling officer had observed several hand-to-hand drug transactions, that customers had to knock on the business' door to enter into the business, and that customers did not stay longer than five minutes. The warrant affidavit did not mention that Richardson's store was not yet open to the public and had a "coming soon" sign outside.

After the judge approved the warrant affidavit, the sheriff's department searched Richardson's store. The officers found 287 ecstasy pills and 11.2 grams of marijuana.

On October 17, 2007, a grand jury returned a seven-count superseding indictment against Richardson. The first four counts related to the March 2, 2006, search warrant and were identical to the charges listed in the first indictment. The additional three counts related to the May 18, 2007, search warrant and included: distribution of MDMA (commonly referred to as ecstasy) (Count 5),[6] possession with the intent to distribute MDMA (Count 6),[7] and possession of marijuana (Count 7).[8]

As we have earlier noted, Richardson filed several pre-trial motions to suppress evidence against him, which were addressed in three suppression hearings conducted by the district court. In addition to filing motions to suppress, Richardson effectively requested a *Franks* hearing to allow him to offer evidence calling into question the truth or falsity of the sheriff's department's statements in the warrant affidavits.

---

[6] Distribution of MDMA violates 21 U.S.C. § 841(a)(1).

[7] Richardson's possession with the intent to distribute MDMA violated 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 3147(1).

[8] The indictment alleged that Richardson's possession of marijuana violated 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 3147(1).

No. 11-30151

The district court conducted suppression hearings on February 5, May 14, and June 3, 2009. The court considered whether there was probable cause supporting the March 2 and May 18 warrants and whether the warrants were otherwise flawed. The district court also stated that it would accept testimony during the suppression hearings as part of a *Franks* hearing or find that a *Franks* hearing was unnecessary. On August 5, 2009, the district court issued an order denying each of Richardson's motions to suppress, finding that the sheriff's department had probable cause to initiate and execute the warrants. The district court further held that "[t]o the extent the defendant is also asking for a *Franks* hearing, that motion is also denied."

Four days before trial, Richardson's attorney filed a motion to withdraw as Richardson's counsel, because Richardson had invoked his right to act as his own counsel. On August 10, 2009, one day before trial was supposed to start, the district court held a *Faretta* hearing.[9] The court denied Richardson's motion to proceed *pro se*, holding that "the defendant's method of insisting on what he believes to be the law and what he believes lawyers should do or not do will interfere with his right to a fair trial."

Richardson went to trial on August 11, 2009. After a three-day trial, the jury convicted Richardson on the counts relating to being a felon in possession of a firearm (Count 2), possession of marijuana plants (Count 4), distribution of MDMA (Count 5), possession with the intent to distribute MDMA (Count 6), and possession of marijuana (Count 7). Richardson was acquitted of two of the charges relating to the March 2, 2006, warrant: distribution of cocaine base

---

[9] A *Faretta* hearing is a hearing conducted to gauge whether a defendant has invoked his or her right to self-representation knowingly, voluntarily, and competently; the judge conducting the hearing must also warn the defendant of the dangers and pitfalls of self-representation. *Faretta v. California*, 422 U.S. 806 (1975).

No. 11-30151

(Count 1) and possession with the intent to distribute marijuana (Count 3). The district court sentenced Richardson to serve 240 months of imprisonment.

Richardson now appeals arguing that the district court erred by denying his motion to suppress the evidence seized in the execution of the March 2, 2006 search warrant, that the district court erred by denying his motion to suppress the evidence seized in the execution of the May 18, 2007, search warrant, that the district court erred by denying his motion for a *Franks* hearing, and, finally, that his Sixth Amendment rights were violated when the district court denied him the right to act as his own counsel at trial.

## II.

## A.

We are now prepared to address Richardson's arguments. His first argument is that the district court erred in denying his motion to suppress the evidence seized in the execution of the March 2, 2006, search warrant.

When considering an appeal of a denial of a motion to suppress, we review legal questions *de novo* and the district court's factual findings for clear error. *United States v. Valadez*, 267 F.3d 395, 397 (5th Cir. 2001). Furthermore, we must view the evidence in the light most favorable to the party who prevailed in district court. *Id.*

The Fourth Amendment provides that "no warrants shall issue but upon probable cause, supported by oath or affirmation." U.S. Const. amend. IV. The exclusionary rule mandates that "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347 (1974) (citations omitted). When considering cases where a search is supported by a warrant, we employ a two-step process for reviewing the district court's denial of a motion to suppress. *See United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999). First, we establish whether the good-faith exception to the

exclusionary rule applies. *Id.*; *see also United States v. Leon*, 468 U.S. 897, 920-21 (1984). The good faith exception applies unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n.23. Thus, the good-faith exception does not apply if the warrant affidavit contains a false statement that was made intentionally or with reckless disregard for the truth. *United States v. Cavazos*, 288 F.3d 706, 709-10 (5th Cir. 2002). If the good-faith exception applies, the police officer is assumed to have acted reasonably under the circumstances and we must deny a motion to suppress, regardless of whether the warrant is actually supported by probable cause. *United States v. Allen*, 625 F.3d 830, 835 (5th Cir. 2010).

If the officer's conduct is such that the good-faith exception does not apply, we must progress to the second step and determine whether, without the false or misleading information, the magistrate issuing the warrant had a substantial basis for believing there was probable cause for the search. *Cherna*, 184 F.3d at 407; *Cavazos*, 288 F.3d at 710.

Here, Richardson argues that he presented incontrovertible evidence indicating that the controlled buy between Anderson and Richardson, which was the primary source of probable cause in the March 2 warrant affidavit, never happened. More specifically, Richardson points to the testimony of Officer Roussell, who indicated that he arrested Anderson and transported Anderson to parish prison. Roussell testified that the controlled buy did not occur and that it could not have happened, because it was not mentioned in his arrest report. Officer Knapp, the other officer present during Anderson's arrest, also testified at the suppression hearing that the controlled buy did not occur.[10]

Richardson further argues that there was no evidence linking Richardson to the identity of "Omar," nor was there any corroborating evidence supporting

---

[10] At trial, Officer Knapp stated that the controlled buy did occur and that his earlier testimony was mistaken.

the controlled buy. The sheriff's department did not use marked bills or a wire when the purchase was allegedly made. Thus, Richardson contends that he established that the controlled buy was fabricated in the warrant affidavit and that the district court erred by upholding the search warrant and by allowing the admission of the fruits of the warrant.

Although Richardson has introduced evidence that challenges Officer Huber's truthfulness in the warrant affidavit, both officers Hall and Huber testified at the suppression hearing that the controlled buy did, in fact, occur. Thus, the district court was presented with conflicting evidence concerning the existence of the controlled buy. We are not in the position to reweigh and second-guess the district court's consideration of valid, contradictory evidence, especially on questions of credibility. Thus, we reject Richardson's argument that the district court erred by denying his motion to suppress the evidence seized in the execution of the March 2 warrant on the grounds of conflicting evidence as to whether the controlled buy actually occurred.

B.

Richardson also argues that the March 2 warrant should be invalidated on the grounds that Officer Huber purposefully omitted facts from the warrant affidavit which would call into question Barry Anderson's reliability as an informant. Richardson also argues that Officer Huber lied in the warrant affidavit about how he came into contact with Anderson.

Fourth Amendment jurisprudence requires that information fabricated by officers be excluded from a warrant affidavit. *See Leon*, 468 U.S. at 924. Similarly, the Fourth Amendment forbids officers from omitting information from a search warrant affidavit if (1) the omission was knowingly and intentionally made or was made in reckless disregard for the truth, and (2) the inclusion of the omitted information would render the affidavit insufficient to

No. 11-30151

support a finding of probable cause. *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980).

The record indeed shows that Anderson never approached Huber and volunteered to perform the controlled buy, as is suggested by Huber in the search warrant affidavit. Furthermore, Huber, in fact, excluded information that might reflect negatively on Anderson's reliability as an informant. Nevertheless, the fact remains that even if the warrant affidavit was amended to correct Huber's misstatements and omissions, the affidavit still establishes probable cause to search Richardson's apartment. The remaining affidavit contains all of the pertinent information relating to Anderson conducting the controlled buy with Richardson, as set out earlier in this opinion, including that: officers searched Anderson before the buy and found that he was contraband-free, Huber saw Anderson approach the side door of Apartment Two; officers saw Richardson answer the apartment door; officers heard Anderson tell Richardson that he wanted to buy forty dollars worth of crack cocaine; and, upon his return from the buy, Anderson gave Officer Hall the crack cocaine that he had purchased from Richardson. This evidence is sufficient basis for probable cause to search Richardson's apartment.

### III.

Thus, having rejected Richardson's arguments for suppressing the evidence seized in the execution of the March 2 warrant, we will proceed to address Richardson's second argument: that the May 18, 2007, warrant was insufficiently supported by probable cause.

Richardson argues that the sheriff's department made misleading statements and significant omissions in its affidavit for a search warrant for Just 4 U Fashion. For example, Richardson contends that the warrant affidavit did not mention the fact that Just 4 U Fashion had a "coming soon" sign outside and was not yet open for business, which would have clarified the erroneous

11

impression that all of the visitors to Richardson's store had to knock to enter as in a "speak easy" context. In fact, only one transaction involved a door knock, and the other transactions occurred in the business' parking lot. Nevertheless, even if the warrant affidavit had stated that the store was not yet open and not all of Richardson's customers had to knock to enter, it is difficult to see how these facts make a notable difference. There was probable cause to issue the warrant based on the information provided by the CI, including that Richardson kept most of his narcotics at his store, the controlled buy involving the CI, that officers found two of the marked bills used during the controlled buy when they executed the arrest warrant on Richardson (which occurred before the officer's application for a search warrant of the business), that Richardson was under surveillance based on the sheriff's department's suspicion of his drug dealing, and that an officer observed Richardson initiate drug deals. This is sufficient.

Richardson also argues that the alleged facts asserted by the officers call into question the affidavit's credibility. First, Richardson contends that although the officers stated in the warrant affidavit that they saw two drug transactions occur in Just 4 U Fashion's parking lot, the officers did not stop or question the persons involved in the alleged transactions. Thus, Richardson argues that the officers' failure to pursue the people involved in the transactions shows that these hand-to-hand transactions never occurred. Moreover, the warrant affidavit is suspicious because it contains a file stamp date for May 21, 2007, three days after the search occurred.

Richardson's contentions involve factual determinations resolved by the district court. The testimony showed that, before conducting the search, the officers called Judge Marabella from Just 4 U Fashion for judicial authority to conduct the search. It is not clearly erroneous for the district court, based on the testimony before it, to have concluded that Judge Marabella authorized the search of Richardson's business on May 18 and the warrant affidavit was

processed by the clerk's office on May 21. Nor is it clearly erroneous for the district court to have concluded that the credibility of the officers is not affected by the fact that the officers did not immediately arrest the buyers of the narcotics.

In sum, the district court did not err in denying Richardson's motion to suppress the evidence seized in the execution of the May 18 warrant.[11]

## IV.

Finally, we now take up Richardson's fourth claim of error: that the district court erred by violating his Sixth Amendment right to represent himself at trial.

Because we are addressing a constitutional right, we review *de novo* the district court's denial of Richardson's motion. *United States v. Joseph*, 333 F.3d 587, 589 (5th Cir. 2003). The district court's factual findings to support its ruling are reviewed for clear error. *United States v. Jones*, 421 F.3d 359, 361 (5th Cir. 2005).

A competent criminal defendant has a Sixth Amendment right to represent himself at trial if he knowingly and intelligently waives his right to counsel. *Id.* at 363; *see also* 28 U.S.C. § 1654. Furthermore, "forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Faretta,* 422 U.S. at 817. Before granting a defendant's

---

[11] In addition to the claims of error regarding the suppression of evidence, Richardson also contends that the district court erred by not conducting a *Franks* hearing addressing the factual circumstances surrounding the warrant affidavits. *Franks*, 438 U.S. at 154. Although the district court did not conduct a formal *Franks* hearing, during the suppression hearings, the district judge allowed Richardson to introduce any and all evidence he had that might prove that the officers included false statements and misleading omissions in the warrant affidavits. Thus, because the judge heard all of Richardson's evidence and considered the truth or falsity of the officers' statements in the warrant affidavits during the suppression hearings, Richardson's rights were protected; the purpose of a *Franks* hearing was served; and, consequently, the district court did not err. *See United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980); *accord United States v. Namer*, 680 F.2d 1088, 1093 n.10 (5th Cir. 1982).

request to proceed *pro se*, however, the court must establish that the defendant "knows what he is doing and his choice is made with eyes open." *Joseph*, 333 F.3d at 590 (citations omitted). To determine whether a defendant has effectively waived the right to counsel, the district court should consider various factors, including the defendant's "age, education, background, experience, and conduct." *Id.* The court must ensure that "the waiver is not the result of coercion or mistreatment, and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practicality of waiving the right to counsel." *Id.*

Even so, the right of self-representation is limited by the trial court's responsibility to maintain order and safety and to prevent disruption and delay. *See United States v. Long*, 597 F.3d 720, 726 (5th Cir. 2010); *see also Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 162 (2000) ("Even at the trial level, therefore, the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer."). A defendant's request to represent himself at trial may be rejected if it is intended to cause delay or some tactical advantage. *Chapman v. United States*, 553 F.2d 886, 894 (5th Cir. 1977). However, we consider a motion for self-representation timely so long as it is filed before the jury has been impaneled. *Id.*

An erroneous denial of the right of self-representation, if established, requires reversal without further analysis for harmless error. *United States v. Majors*, 328 F.3d 791, 794 (5th Cir. 2003).

In addressing Richardson's argument that he was constitutionally entitled to represent himself, we begin by noting that it is uncontested on appeal that Richardson was competent to represent himself and that Richardson made a knowing and intelligent waiver of counsel. Furthermore, Richardson repeatedly insisted that he wanted to proceed *pro se*, indicating the

voluntariness of his request. The district judge thoroughly fulfilled his duty to warn Richardson, stating: "If you represent yourself, you're going to be convicted because, you know what? You know a little bit [about the law] that's causing you to think you know a lot. And thinking you know a lot is going to put you in the Bureau of Prisons for a long, long time." In spite of the district court's graphic warnings about the practical consequences of acting as his own counsel, Richardson maintained throughout the hearing that he was aware of the consequences and that he wished to represent himself.

The Government makes the following arguments supporting the district court's denial of self-representation: that Richardson's motion to represent himself was untimely, that it was made for the purpose of delay, and that Richardson waived his right to represent himself by being disruptive and disorderly. The Government's arguments have no merit.

First, it is well established that a motion to represent oneself is timely so long as it is made before the jury is impaneled. *Chapman*, 553 F.2d at 894-95. Because Richardson filed his motion four days before trial, his motion was timely. Second, he expressly stipulated that he was not seeking a continuance or any other delay of the trial. In short, there is no substantial basis to contend that Richardson's motion was a diversionary tactic.

Finally, there is no indication in the record that the district judge determined that Richardson intended to be physically disruptive so as to obstruct the trial. A review of the *Faretta* hearing transcript makes it quite clear that the judge simply concluded that having professional counsel was a wiser course of action that would make for a cleaner and fairer trial.[12] The trial

---

[12] We recognize that the district judge expressed concern that "based on the defendant's actions . . . and statements both in the in-camera proceeding as well as in open court, as well as during the motions to suppress, that the defendant's behavior – and I'm not talking about trying to hurt someone – but his unwillingness to accept a ruling . . . will jeopardize his right to a fair trial." We understand the district court's frustration. Pro se defendants are often

No. 11-30151

judge explained that "the real concern of the Court is injecting extraneous and irrelevant subject matter into the record" and that "the defendant's method of insisting on what he believes to be the law and what he believes lawyers should do or not do will interfere with his right to a fair trial." This is not, however, a sufficient basis to refuse a defendant the right to act as his or her own counsel, nor is it equivalent to finding that a defendant will obstruct justice by being disruptive. *Faretta* itself appears to address and resolve the instant argument, holding that "technical legal knowledge" is "not relevant" to an assessment of his knowing exercise of the right to defend himself. *Faretta*, 422 U.S. at 836.

In sum, because Richardson knowingly and voluntarily filed the *pro se* motion and because there was no constitutionally permissible reason to deny Richardson the right to represent himself under *Faretta* and its progeny, we hold that the district court erred in denying Richardson's Sixth Amendment right to self-representation and therefore each of his convictions and sentences are vacated. Richardson is entitled to a new trial on all counts of the indictment for which he was convicted; the acquittals on the two counts remain.

## V.

To review our resolution of this appeal, we hold that the district court did not err in denying Richardson's motions to suppress the March 2 and May 18 search warrants. Moreover, because the district court considered all of the evidence that would have been presented during a *Franks* hearing, the district court did not err by denying Richardson's motion for a separate hearing to

---

burdensome on a trial judge's time, resources, and patience. Yet, a court cannot deny a motion for self-representation for reasons that would be common to most untrained pro se criminal defendants. *Cf. United States v. Vernier*, 381 F. App'x 325, 329 (5th Cir. 2010) (holding that a defendant did not have the right to represent himself at trial when he "posed a risk of violence and escape, . . . was defiant and troublesome, and . . . boasted that he wanted to go out in a bloody confrontation, to disrupt his trial, and to make news"); *accord Buhl v. Cooksey*, 233 F.3d 783, 797 (3d Cir. 2000). Otherwise, the right to self representation would be constructively abrogated.

resolve his *Franks* claim.[13]  We therefore AFFIRM the district court's denial of Richardson's motions to suppress and for a *Franks* hearing.

However, the right to self-representation in a criminal trial is a constitutional right under the Sixth Amendment.    Here, Richardson competently, knowingly, and intelligently invoked this right.  Because there was no constitutionally cognizable justification for denying Richardson's right to self-representation, we VACATE each of his convictions and sentences and REMAND for further proceedings not inconsistent with this opinion.

---

[13] In the event a new trial is conducted on remand, our disposition in this appeal of all motions, which were presented to the district court before Richardson invoked his right to self-representation, are unaffected by our vacating Richardson's convictions and sentences on Sixth Amendment grounds and will be controlling in any proceeding on remand.