# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-31190

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

ALMOND J. RICHARDSON,

Defendant–Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

March 20, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Middle District of Louisiana

Before PRADO, ELROD, and HAYNES, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

This appeal presents the question of whether the trial testimony of a government witness elicited in contravention of the defendant's Sixth Amendment right of self-representation constitutionally may be admitted in the defendant's retrial when the witness becomes unavailable between the first and second trials. We conclude that, if the defendant had an adequate opportunity for cross-examination at the first trial, then the witness's prior testimony may be introduced in the second trial without offending the Confrontation Clause, at least when the defendant has not claimed that he received ineffective assistance of counsel at the first trial.

No. 13-31190

In addition, we find the appellant's remaining claims of error—the denial of a mistrial and the application of the federal sentencing guidelines—to be without merit. We therefore affirm the conviction and sentence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In May 2007, Garfen Neville, a confidential informant, contacted the Narcotics Division of the East Baton Rouge Sheriff's Office to offer information about local narcotics trafficking. Neville reported that an individual, later identified as Appellant Almond Richardson, was selling narcotics out of his apartment as well as his business, a store called Just 4 U Fashion.

On May 17, 2007, the officers arranged a controlled narcotics purchase between Neville and Richardson at Richardson's home. The officers equipped Neville with a wire, gave him $500 in prerecorded buy money, searched him to ensure that he had no other money or narcotics in his possession, and instructed him to buy fifty doses of ecstasy. One officer watched Neville's interaction with Richardson, while other officers listened to the exchange over Neville's wire; all officers reported observations consistent with a narcotics transaction. Afterwards, the officers met Neville at an agreed location, and Neville confirmed the purchase and turned the narcotics over to the police.

The following day, the officers obtained an arrest warrant for Richardson and a search warrant for his apartment. They also conducted surveillance of Just 4 U Fashion and observed what appeared to be hand-to-hand narcotics transactions between Richardson and several unapprehended individuals. The officers entered the store and arrested Richardson. During a search of Richardson's person incident to his arrest, officers discovered two bills of Neville's prerecorded buy money.

The officers then executed the search warrant at Richardson's apartment and secured a search warrant for Just 4 U Fashion. Although the search of Richardson's home yielded no contraband, the ensuing search of Just 4 U

2

No. 13-31190

Fashion yielded a digital scale; marijuana; and a bag containing 287 doses of ecstasy, a small amount of marijuana, one Lortab (hydrocodone) pill, and one unidentified pill.

A federal grand jury indicted Richardson on charges of distribution of crack cocaine, possession of a firearm by a convicted felon, manufacture of marijuana, possession of marijuana, distribution of ecstasy, and possession of ecstasy with intent to distribute.[1] Four days before the scheduled trial date, Richardson moved to represent himself. The district court denied Richardson's motion to proceed pro se, and the case proceeded to trial with Richardson represented by retained counsel Steven Moore.[2] All of the Government's witnesses, including Neville, were cross-examined by Moore. Moore specifically questioned Neville about his motives for cooperating with the police, his past arrests and convictions for narcotics-related and violent offenses, and his relationship with Richardson.

The jury convicted Richardson of five of the seven charges—possession of a firearm by a convicted felon, manufacture of marijuana, possession of

---

[1] Several of these counts pertained to a March 2006 arrest, which Richardson contested in his first appeal. *United States v. Richardson*, 478 F. App'x 82, 87–89 (5th Cir. 2012) (per curiam). He raises no claims of error related to the first arrest or the first set of charges in the present appeal.

[2] Richardson offered conflicting explanations for his request to dismiss Moore as counsel and represent himself. He testified at the hearing on his motion to proceed pro se that "[t]he problem [he] had with Mr. Moore was . . . the foundation of the argument," explaining that he wished to present alibi evidence and challenge the veracity of the information in the warrant affidavits. The district court and Moore explained the limits on Richardson's ability to advance these theories at trial, given the rulings on the motions to suppress and the want of competent corroborative evidence, but Richardson maintained his disagreement with Moore on trial strategy. Moore also affirmed that he and Mr. Richardson "ha[d] become . . . diametrically opposed [on] certain issues," including matters of strategy that implicated Moore's ethical obligations, such that the representation was "not conflict-free." Richardson alternately claimed that he had hired Moore only to argue the pretrial motions to suppress, and that Moore "knew [of this arrangement] well in advance." However, Richardson denied having received an engagement letter setting forth the scope of Moore's representation, and averred that his communications with Moore were "limited."

No. 13-31190

marijuana, distribution of ecstasy, and possession of ecstasy with intent to distribute. The Presentence Investigation Report (PSR) assigned Richardson a total offense level of 32, resulting in a U.S. Sentencing Guidelines Manual (U.S.S.G. or Guidelines) sentencing range of 210 to 262 months' imprisonment. Due in part to a 1999 conviction for armed robbery, the PSR classified Richardson as a career offender pursuant to U.S.S.G. § 4B1.1. Richardson objected to the career-offender enhancement, arguing that there were no records of the armed-robbery arrest or plea agreement. The probation office disagreed, citing sentencing minutes confirming Richardson's conviction, and the district court adopted the PSR without amendment.

Richardson appealed his conviction, arguing that the district court erred by denying (1) his motions to suppress, (2) his motion for a *Franks* hearing to present evidence contesting the veracity of the statements in the search-warrant affidavit, and (3) his motion to proceed pro se. *United States v. Richardson*, 478 F. App'x 82, 83 (5th Cir. 2012) (per curiam).[3] A panel of this Court found no error in the district court's rulings on the motions to suppress and the motion for a *Franks* hearing, but it concluded that the district court had violated Richardson's Sixth Amendment right of self-representation. *Id.* at 92. Accordingly, the panel vacated Richardson's conviction and sentence and remanded for further proceedings, noting that its disposition of all motions presented to the district court before Richardson invoked his right of self-representation would be controlling on remand. *Id.* at 92 & n.13.

Following remand, the district court accepted Richardson's waiver of his right to counsel and, on the Government's motion, dismissed two counts from the indictment. Richardson, proceeding pro se with standby counsel, was tried

---

[3] Richardson raised no other claims of error in his first appeal to this Court. *See* First Original Brief for Appellant Almond J. Richardson at 1, *Richardson*, 478 F. App'x 82 (No. 11-30151), 2011 WL 8320499.

4

for distribution of ecstasy, possession of ecstasy with intent to distribute, and possession of marijuana.

Between the first and second trials, however, Neville was murdered in an apparent failed narcotics transaction. Richardson filed a motion in limine, seeking, *inter alia*, to exclude Neville's prior testimony or, in the alternative, to present evidence to impeach Neville. At the hearing on the motion, Richardson decried Moore's cross-examination of Neville as deficient and expressed his view that Moore was "not adequately prepared" to attack Neville's testimony. The district court denied Richardson's motion to exclude Neville's prior testimony, finding no violation of Federal Rule of Evidence 804(b)(1) or the Confrontation Clause, and granted Richardson's request for records concerning the circumstances of Neville's death. The district court observed that it had "extensively reviewed" Neville's direct- and cross-examination and concluded that "the opportunity to cross-examine Neville, while admittedly not exactly as the defendant wishes it had been, was adequate and meaningful under the law." Further, the district court found "that counsel for the defendant did question Neville with a similar motive as the defendant maintains in the current proceedings, despite the possible difference in trial strategy." At trial, Richardson renewed his objection to Neville's prior testimony and was again overruled.

In addition, during the second trial, Detective Sergeant Rob Chambers made three statements that drew objections from Richardson and ultimately served as the basis for Richardson's motion for mistrial. Specifically, Chambers testified that Richardson told him at the time of his arrest that he was working as an informant for the Drug Enforcement Administration (DEA); that Neville claimed to have met Richardson while the two men were working as informants in New Orleans; and that narcotics other than those at issue in the trial were recovered from Just 4 U Fashion. The judge sustained Richardson's

No. 13-31190

objections and instructed the jury to disregard each statement. Richardson contended that the Government had not disclosed his and Neville's statements before trial and that Chambers's reference to uncharged narcotics was extraordinarily prejudicial. The district court denied Richardson's motion, citing its curative instructions, but it offered to permit Richardson to supplement the proposed jury charges. The district court also denied Richardson's subsequent motions for a judgment of acquittal. The jury ultimately found Richardson guilty on all counts.

At sentencing, the PSR again assigned a total offense level of 32 and a Guidelines range of 210 to 262 months' imprisonment, and again applied the career-offender enhancement based in part on Richardson's 1999 conviction for armed robbery. Richardson again objected to the career-offender enhancement but now argued that his guilty plea was involuntary. He could not, however, provide any records to support this claim, as the relevant court records, he said, likely had been destroyed by Hurricane Katrina. The probation office disagreed with Richardson, asserting that it had obtained records supporting the validity of the conviction, "including a charging instrument, waiver of rights form, electronic sentencing minutes, and Louisiana Department of Public Safety and Corrections documents." The district court overruled Richardson's objection[4] and sentenced him to a term of 210 months' imprisonment and five years of supervised release.

Richardson timely appealed his conviction and sentence.

---

[4] Although the record is not clear as to which documents the district court had before it when ruling on this objection, the Government asserts that the district court had the minute entry and docket sheet. Additionally, the Government successfully moved this Court to supplement the record with all of the documents referenced in the Supplemental Addendum to the PSR.

No. 13-31190

## II. DISCUSSION

The district court had jurisdiction over the original criminal action under 18 U.S.C. § 3231. This Court has jurisdiction over Richardson's appeal under 28 U.S.C. § 1291.

Richardson, now represented by counsel, raises three claims of error relating to his conviction and sentence. First, he argues that the admission of Neville's prior testimony at the second trial violated the Confrontation Clause because this testimony was taken in violation of his Sixth Amendment right of self-representation. Second, he contends that the district court erred in denying his motion for a mistrial based on Detective Sergeant Chambers's testimony. Third, he asserts that the district court erroneously premised the career-offender enhancement on an involuntary guilty plea. We discuss each claim of error in turn.

### A.    The Confrontation Claim

Richardson claims that the admission of Neville's prior testimony in the second trial violated his Sixth Amendment right to confront adverse witnesses because the denial of his right of self-representation at the first trial deprived him of an adequate opportunity to cross-examine Neville. This is a matter of first impression in this Circuit.

"Alleged violations of the [Sixth Amendment's] Confrontation Clause are reviewed *de novo*, but are subject to a harmless error analysis." *United States v. Bell*, 367 F.3d 452, 465 (5th Cir. 2004).

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Clause bars the introduction of testimonial evidence against a criminal defendant unless the proponent shows both that the declarant is unavailable and that the defendant had "a prior opportunity for cross-examination." *Crawford v. Washington*, 541

U.S. 36, 68 (2004). The Court has repeatedly emphasized that the purpose of the cross-examination requirement is to enable the opponent to test the credibility of the witness and the reliability of his proffered testimony.[5] Correspondingly, while excessive limitations on the scope of cross-examination may violate a defendant's Sixth Amendment right of confrontation, the Clause requires only an adequate *opportunity* for cross-examination.[6]

Applying these standards, this Court has held that the Confrontation Clause "is satisfied where defense counsel has been 'permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.'" *United States v. Restivo*, 8 F.3d 274, 278 (5th Cir. 1993) (quoting *Davis*, 415 U.S. at 318). "The relevant inquiry is whether the jury had sufficient information to appraise the bias and motives of the witness." *United States v. Tansley*, 986 F.2d 880, 886 (5th Cir. 1993).[7]

---

[5] *See Crawford v. Washington*, 541 U.S. 36, 61 (2004) ("[The Clause] commands, not that evidence be reliable, but that the reliability be assessed in a particular manner: by testing in the crucible of cross-examination."); *Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested."); *Mattox v. United States*, 156 U.S. 237, 242–43 (1895) (noting that the Clause contemplates "a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may . . . judge . . . whether he is worthy of belief").

[6] *See Crawford*, 541 U.S. at 57 (reading *Mattox* as "holding that prior trial or preliminary hearing testimony is admissible only if the defendant had an adequate opportunity to cross-examine," and declaring the Court's subsequent cases to be consistent with this approach); *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) ("Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."); *Ohio v. Roberts*, 448 U.S. 56, 73 n.12 (1980) ("We hold that in all but such extraordinary cases [as those in which defense counsel provided ineffective representation at the proceeding where the testimony was elicited], no inquiry into [the] 'effectiveness' [of cross-examination] is required."), *abrogated on other grounds by Crawford*, 541 U.S. at 68–69.

[7] *Compare United States v. Jimenez*, 464 F.3d 555, 561–62 (5th Cir. 2006) (holding that the district court violated the Confrontation Clause by preventing defense counsel from cross-examining a police officer about the location from which he allegedly observed the

No. 13-31190

Correspondingly, this Court has rejected a Sixth Amendment claim premised on "inadequate" cross-examination at a prior proceeding by "different counsel with a different defense theory." *United States v. Amaya*, 533 F.2d 188, 191–92 (5th Cir. 1976). In *Amaya*, the defendant was convicted of conspiracy to distribute heroin, based in part on the detailed trial testimony of a government witness. *Id.* at 190. This Court reversed the conviction and granted a new trial based on an impermissible *Allen* charge. *Id.* Between the first and second trials, the government witness suffered an injury that resulted in a loss of memory regarding his prior testimony. *Id.* Over the defendant's confrontation objection, the district court admitted the witness's prior testimony in the second trial. *Id.* Before this Court, the defendant argued that "he did not have adequate cross-examination of the witness at the prior trial" because, *inter alia*, "different counsel with a different defense theory conducted the cross-examination at the first trial." *Id.* at 191. This Court rejected the defendant's theory, remarking that neither the Federal Rules of Evidence nor our case law "condition the use of prior testimony on representation by the same counsel at both trials." *Amaya*, 533 F.2d at 191–92. Rather, this Court declared, "[a]dequate opportunity for cross-examination by competent counsel is sufficient." *Id.* at 192.

Although *Amaya* predates the Supreme Court's watershed decision in *Crawford*, the Court in *Crawford* did not purport to set forth new standards governing the effectiveness of cross-examination. To the contrary, the Court *reaffirmed* its precedents holding that "an adequate opportunity to cross-

---

defendant selling narcotics), *with United States v. McCullough*, 631 F.3d 783, 791 (5th Cir. 2011) (finding no violation of the Confrontation Clause when defense counsel was permitted to question a prosecution witness "about numerous issues that implicated both his motivation to lie and his previous history of dishonesty and untruthful behavior" and was barred only from adducing cumulative evidence of the witness's untruthfulness and of the specifics of prior crimes excluded under Federal Rule of Evidence 403). Although these cases address limitations on the scope of cross-examination, they shed light on the standards by which the adequacy of cross-examination may be judged.

examine" a now-unavailable witness would satisfy the Confrontation Clause. *See Crawford*, 541 U.S. at 57 (citing, *inter alia*, *Mancusi v. Stubbs*, 408 U.S. 204, 213–16 (1972); *California v. Green*, 399 U.S. 149, 165–68 (1970); *Pointer v. Texas*, 380 U.S. 400, 406–08 (1965); *Mattox v. United States*, 156 U.S. 237, 244 (1895)).[8]

Richardson contends that Neville "was not subject to the cross-examination secured by" the Confrontation Clause because his testimony was taken in violation of Richardson's constitutional right of self-representation. He also asserts that Moore, his counsel at the first trial, did not properly cross-examine Neville. The Government responds that the Confrontation Clause "only guarantees an opportunity for effective cross-examination"—a standard that Moore satisfied by "effectively and thoroughly" questioning Neville about his cooperation with law enforcement and his motives to lie.

We agree with the Government. As explained above, the relevant case law speaks in terms of an "adequate" or "effective" "opportunity" for cross-

---

[8] We observe that, of the cases cited in *Crawford*, the Court found an inadequate opportunity for cross-examination only in *Pointer v. Texas*, 380 U.S. 400, 407–08 (1965). There, the declarant testified at a preliminary hearing, and although the defendant was present for the hearing, he was unrepresented by counsel and did not attempt to cross-examine the declarant. *Id.* at 401. The preliminary-hearing testimony was then admitted at the defendant's criminal trial over the defendant's objection. *Id.* at 401–02. The Court declared the admission of this testimony unconstitutional, reasoning that the declarant's statement "had not been taken at a time and under circumstances affording petitioner through counsel an adequate opportunity to cross-examine." *Id.* at 407; *cf. Mancusi v. Stubbs*, 408 U.S. 204, 213–16 (1972) (finding "an adequate opportunity" for cross-examination of a witness at the defendant's first trial, despite the vacatur of the conviction for ineffective assistance of counsel, because the defendant "was represented by counsel who could and did effectively cross-examine prosecution witnesses," and the defendant could not "show any new and significantly material line of cross-examination that was not at least touched upon in the first trial"); *California v. Green*, 399 U.S. 149, 165–68 (1970) (finding no Confrontation Clause violation where the defendant, through counsel, "had every opportunity to cross-examine" the declarant at a preliminary hearing and, indeed, "[did] not appear to have been significantly limited in any way in the scope or nature of his cross-examination"); *Mattox*, 156 U.S. at 244 (finding no Confrontation Clause violation where the declarants "were fully examined and cross-examined on the former trial").

examination, and it recognizes that there are constitutionally permissible limits on the scope of cross-examination. Richardson has not shown that he lacked such an opportunity.[9]

Critically, the transcript of Neville's cross-examination shows that Moore questioned Neville in detail about his motive to cooperate with law enforcement; his arrests and convictions for family violence, theft, and possession of narcotics and firearms; his relationship with Richardson; and the contours of his trial testimony. Even accepting Richardson's argument that Moore failed to press Neville on his employment and his narcotics use, we cannot say that Moore's cross-examination failed to provide the jury with constitutionally "sufficient information to appraise the bias and motives of the witness," *Tansley*, 986 F.2d at 886. Nor, for that matter, can we say that Richardson's proposed questions constitute a "new and *significantly material* line of cross-examination that was not *at least touched upon* in the first trial," *Mancusi*, 408 U.S. at 215 (emphases added). As the district court wrote in its ruling on the motion in limine, "the opportunity to cross-examine Neville, while admittedly not exactly as the defendant wishes it had been, was adequate and meaningful under the law."

Further, Richardson does not claim that Moore's assistance was per se ineffective. In fact, he made conflicting statements to the district court regarding

---

[9] Richardson presents no authority in support of a per se rule of inadmissibility when the declarant's prior testimony was elicited in violation of the defendant's Sixth Amendment right of self-representation. It appears that no such authority exists. We note that a categorical approach could severely disadvantage the Government in criminal prosecutions and could lead to perverse results (e.g., effective cross-examination deemed constitutionally infirm because the defendant wished to represent himself and argue a theory grounded in inadmissible evidence). *Cf. Mancusi*, 408 U.S. at 215–16 (observing that a missed line of questioning at the defendant's first trial did not render the defendant's opportunity for cross-examination inadequate because the testimony "could not have prejudiced [the defendant's] case as to any issue that the jury was authorized to deliberate under the trial judge's charge").

the quality of Moore's representation.[10] To the extent Richardson's complaint can be construed as one regarding trial strategy, it is foreclosed by Supreme Court and Fifth Circuit precedent. *See Crawford*, 541 U.S. at 57–59; *Roberts*, 448 U.S. at 73 n.12; *Amaya*, 533 F.2d at 191–92.

For these reasons, we find no violation of the Confrontation Clause.

## B.    The Motion for Mistrial

Richardson next asserts that the district court erred in denying his motion for mistrial based on Detective Sergeant Chambers's inadmissible testimony.

We review the denial of a motion for mistrial founded on the admission of prejudicial evidence for abuse of discretion. *United States v. Paul*, 142 F.3d 836, 844 (5th Cir. 1998). Under this standard, "a new trial is required only if there is a significant possibility that the prejudicial evidence had a substantial impact upon the jury verdict, viewed in light of the entire record." *Id.* "We give great weight to the trial court's assessment of the prejudicial effect of the evidence," and we examine the context of the disputed statement to ascertain its source—namely, whether it was elicited by the Government or spontaneously volunteered by the witness. *United States v. Valles*, 484 F.3d 745, 756 (5th Cir. 2007) (per curiam). Further, "prejudice may be rendered harmless by a curative instruction." *Id.* Indeed, "[t]his Court has consistently held that an erroneous admission of evidence may be cured by such a limiting instruction because jurors are presumed to follow the court's instructions."

---

[10] At the hearing on his motion in limine, Richardson stated: "I'm not suggesting that Mr. Moore was ineffective in the sense that he doesn't know anything about the law or trial strategy. I'm suggesting that Mr. Moore was not adequately prepared and he was ineffective in the sense that I told him not to do anything on my case." Later in the hearing, he said: "Mr. Moore and I had . . . a disagreement . . . [regarding] what defense strategy best advance[d] my cause. And when it came to cross examining Mr. Nevil[le], I had information that I personally knew about that Mr. Moore was unfamiliar with. I hadn't discussed it with him." Yet later, he explained: "I am not suggesting Mr. Moore was . . . ineffective as a lawyer. I believe he's an excellent attorney. This was by my choice."

No. 13-31190

*Paul*, 142 F.3d at 844. There is, however, an exception for testimony that is "so highly prejudicial as to be incurable by the trial court's admonition." *United States v. Ramirez–Velasquez*, 322 F.3d 868, 878 (5th Cir. 2003) (internal quotation marks omitted). Only testimony "likely to have a substantial impact on the jury's verdict" will meet this threshold. *Id.*

Richardson identified three inadmissible statements from Chambers's testimony in his motion for mistrial: (1) that Richardson stated at the time of his arrest that he was working as an informant for the DEA; (2) that Neville claimed to have met Richardson while the two were working as informants in New Orleans; and (3) that narcotics other than those listed in the indictment were discovered inside of Just 4 U Fashion. According to Richardson, the Government failed to apprise him of the first two statements before trial, and the allusion to uncharged narcotics was incurably prejudicial. All three statements, he says, are "so inflammatory that the [curative] instructions were insufficient to cure" the harm.

### 1.    *The References to Richardson's Alleged Work as an Informant*

Richardson claims that because Neville was the sole firsthand witness to the narcotics transaction, his defense rested principally on the successful impeachment of Neville's credibility. He maintains that he intended to impeach Neville through evidence that Neville was "a drug abuser and/or dealer" whose murder was connected to narcotics, as well as through evidence that Neville was "a paid informant whose testimony was inherently unreliable." Accordingly, Chambers's testimony casting Richardson as an informant was "severely prejudicial" to Richardson's strategy, and the Government's failure to disclose Richardson's and Neville's statements before trial hampered Richardson's ability to form a defense. The Government counters that Chambers's testimony "merely explained an alleged fact of which the jury was already well aware"—Richardson's alleged affiliation with the

No. 13-31190

DEA. It also stresses that Richardson failed to rebut the presumption that any resulting prejudice was alleviated by the district court's curative instructions.

We agree with the Government. For several reasons, Chambers's testimony regarding Richardson's alleged work as an informant was not so prejudicial as to warrant a mistrial. First, the Government did not deliberately elicit the contested testimony. The testimony regarding Richardson's statement upon his arrest was elicited by the Government on direct examination, but it appears to have been unintentional: "Q. Okay. And did Mr. Richardson make any statements to you regarding his second arrest? A. He was claiming that we planted the drugs on him. Q. Did he say anything about being out on bond or anything like that? A. He advised that he is an informant for DEA . . . ." In comparison, the testimony concerning Neville's statement was elicited by Richardson himself during cross-examination: "Q. . . . What did the informant tell you about our relationship? A. He said he knew you from being informants in New Orleans together." In neither case can the Government be faulted for the circumstances surrounding Chambers's remarks. *See Valles*, 484 F.3d at 756.

Second, Richardson timely objected to each statement, and the district court gave adequate curative instructions. *See id.* In fact, the judge gave a total of three sets of curative instructions: one set at the time of the testimony to address Neville's specific objections, one set at the end of the first day of trial explicitly directed to Chambers's statements, and one set at the close of trial in reference to evidence previously ruled inadmissible. Richardson has presented no evidence to rebut the presumption that the jury heeded the district court's curative instructions, *see Paul*, 142 F.3d at 844, nor has he cited any cases to support his characterization of the evidence as irredeemably inflammatory, *see Ramirez–Velasquez*, 322 F.3d at 878.

14

In fact, Richardson stands on shaky ground when he paints his ability to tar Neville's credibility through evidence of his informant activities as the linchpin of his defense. Contrary to Richardson's position, the Government presented evidence other than Neville's testimony that tended to prove Richardson's participation in narcotics trafficking. For instance, the Government offered testimony concerning the recovery of the prerecorded buy money from Richardson's person, the officers' observations of Richardson's interaction with Neville, and suspected narcotics sales at Just 4 U Fashion. Moreover, Richardson was apparently undeterred from impeaching Neville's credibility by reference to his financial motive to serve as an informant for the East Baton Rouge Sheriff's Office: He cross-examined Deputy Sheriff Joseph Lochridge about Neville's "motivation . . . for coming forward with this information" and elicited the response, "He wanted to get paid."

Finally, the essence of the testimony was not new to Richardson. Neville had testified on cross-examination at the first trial that "Almond himself was a CI, . . . and he already probably had the notion of what I was doing because that's what I was set out to do when I first met him." This fact not only undermines Richardson's claim of unfair surprise, but also mitigates the impact of Chambers's statements given that Neville's prior testimony was read to the jury in the second trial. *Cf. Valles*, 484 F.3d at 756 ("[The inadmissible testimony] only tended to confirm what was already known . . . .").

In view of the above, we hold that Chambers's statements regarding Richardson's alleged informant activity were not so prejudicial as to nullify the district court's curative instructions.

### 2.    *The Reference to Uncharged Narcotics*

Richardson next argues that Chambers's allusion to uncharged narcotics was incurably prejudicial. He also contends that the district court unfairly faulted him for failing to object earlier—either in his first appeal or in a motion

to suppress—despite the Sixth Amendment violation in the first trial and the court's refusal to entertain any additional motions to suppress in the second trial. The Government reiterates its view that the court's instructions presumptively cured any harm.

We again agree with the Government. Though the Government elicited the contested testimony on direct examination by asking Chambers to identify the items found in a bag seized from Just 4 U Fashion, it immediately pointed out that Richardson had not been charged with possession of narcotics other than ecstasy and marijuana and emphasized that "we are only interested in those items that pertain to this indictment." And as with the other objectionable testimony, the district court gave the jury both a specific instruction to disregard at the end of the first day of trial, and a general instruction to disregard at the close of trial.

As before, Richardson fails to adduce any evidence that the district court's cautionary instructions were inadequate to cure the prejudice. A single extraneous reference to "one Lortab . . . and some unknown pill," followed by an explicit instruction to disregard, was not so prejudicial in the context of all other evidence that it created a "significant possibility" of a "substantial impact" on the jury's verdict, *see Paul*, 142 F.3d at 844; *cf. United States v. Delgado*, 672 F.3d 320, 340 (5th Cir. 2012) (en banc) (affirming the denial of a motion for mistrial based on alleged extraneous-offense evidence because the testimony in question "did little more than repeat a fact of which the jury was already well aware" and "any prejudice was mitigated by the district court's prompt and thorough curative instruction").

Richardson's claim of unfairness in the district court's ruling concerning the uncharged narcotics is unavailing as well. Contrary to Richardson's assertion that the district court effectively erected an unjust procedural bar to objection, the district court simply observed that Richardson had neither raised

the claimed Federal Rule of Evidence 404(b) error on appeal nor objected to the evidence before the second trial. It is true that Richardson was represented by counsel against his will when the Rule 404(b) issue arose in his first trial, but this does not excuse his failure to raise any corresponding error in his first appeal or, more importantly, his failure to object before the second trial. And while Richardson claims that the district court "had previously informed [him] that it would not entertain any additional motions to suppress," the record is actually ambiguous on this point:

> The Court: . . . And you understand we are not going to go through any *Franks* hearings, any motions to suppress. All of that has been ruled on by the Fifth Circuit and the court has been affirmed. The Fifth Circuit says those rulings will control the retrial of this case; you understand that?

> The Defendant: Yes, sir. Even in the event of any newly discovered evidence?

> The Court: The motions, the rulings on those motions will control in this case. And I am not going to let—I'm not going to retry motions to suppress.

Even construing the district court's statements in the light most favorable to Richardson, the court's ruling would have no impact on Richardson's obligation to respond to the Government's Rule 404(b) notices.

In sum, deferring to the district court's assessment of the prejudicial effect of the challenged evidence and affording due regard for the impact of the court's repeated curative instructions, we hold that the district court did not abuse its discretion in denying Richardson's motion for mistrial.

## C.    The Career-Offender Enhancement

Lastly, Richardson argues that the district court erroneously sentenced him as a career offender under U.S.S.G. § 4B1.1 because one of his predicate convictions—a 1999 conviction for armed robbery—was the product of an involuntary guilty plea.

No. 13-31190

For preserved error, we review a district court's application of the Guidelines de novo and its factual findings for clear error. *United States v. Ruiz*, 621 F.3d 390, 394 (5th Cir. 2010) (per curiam). The proponent of an adjustment to the defendant's sentence level "must establish the factual predicate justifying the adjustment . . . by a preponderance of the relevant and sufficiently reliable evidence." *United States v. Alfaro*, 919 F.2d 962, 965 (5th Cir. 1990). However, "[t]he burden of proving the constitutional invalidity of a prior conviction rests on the defendant." *United States v. Howard*, 991 F.2d 195, 199 (5th Cir. 1993).

Richardson objected to the PSR's career-offender sentence enhancement in both his first and second sentencing proceedings, but on different grounds. At his first sentencing, Richardson contended that there were no records of the armed-robbery arrest or plea agreement. At his second sentencing, Richardson contended that his guilty plea was involuntary, as his attorney had accepted the plea in his absence and had later advised him not to "make any protests about it." In both cases, the probation office disagreed with Richardson's objections and cited state-court records confirming the validity of the conviction, and the district court adopted the PSRs.[11] Richardson did not raise any error relating to his sentence in his first appeal. *See supra* note 3.

Richardson argues that the state-court records that could corroborate his claims were presumptively destroyed in Hurricane Katrina, such that he cannot discharge his burden of establishing the constitutional infirmity of his conviction. He submits, without authority, that this Court should recognize an "act of God" exception to the ordinary allocation of burdens of proof.

We find Richardson's arguments unpersuasive. The probation office rebutted Richardson's objection in its Supplemental Addendum to the PSR,

---

[11] Richardson claims to have perfected an appeal of the armed-robbery conviction, but he does not provide any citation or record in support.

noting that it had obtained "a charging instrument, waiver of rights form, electronic sentencing minutes, and Louisiana Department of Public Safety and Corrections documents" that belied Richardson's claims. Although there is some ambiguity in the record as to which documents the district court had before it when ruling on Richardson's objection, any of the records presented by the Government would tend to prove that Richardson personally appeared in court and entered a valid guilty plea. *See supra* note 4. Richardson has presented no competent evidence to the contrary (e.g., an affidavit by Richardson or by his attorney at the plea hearing), so even were we to apply the "act of God" exception Richardson advocates, we would reach the same result. In light of the Government's evidence, we hold that district court committed no reversible error in ruling the predicate conviction valid.

## III. CONCLUSION

For the foregoing reasons, we affirm Richardson's conviction and sentence.